IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| CHARLES BOWLES, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| v. ) | Case No. CIV-17-1136-STE |
| ) | |
| NANCY A. BERRYHILL, Deputy ) | |
| Commissioner for Operations, ) | |
| performing the duties and functions ) | |
| not reserved to the Commissioner of ) | |
| Social Security, ) | |
| ) | |
| Defendant. ) | |

## MEMORANDUM OPINION AND ORDER

Plaintiff brings this action pursuant to 42 U.S.C. § 405(g) for judicial review of the final decision of the Commissioner of the Social Security Administration denying Plaintiff's application for disability insurance benefits under the Social Security Act. The Commissioner has answered and filed a transcript of the administrative record (hereinafter TR. ____). The parties have consented to jurisdiction over this matter by a United States Magistrate Judge pursuant to 28 U.S.C. § 636(c).

The parties have briefed their positions, and the matter is now at issue. Based on the Court's review of the record and the issue presented, the Court **REVERSES AND REMANDS** the Commissioner's decision.

## I. PROCEDURAL BACKGROUND

Initially and on reconsideration, the Social Security Administration denied Plaintiff's application for benefits. Following an administrative hearing, an Administrative Law Judge

(ALJ) issued an unfavorable decision. (TR. 15-29). Subsequent to the decision, the Appeals Council declined Plaintiff's request for review. (TR. 1-3). Thus, the decision of the ALJ became the final decision of the Commissioner. *See Krauser v. Astrue*, 638 F.3d 1324, 1327 (10th Cir. 2011).

## II. THE ADMINISTRATIVE DECISION

The ALJ followed the five-step sequential evaluation process required by agency regulations. *See Fischer-Ross v. Barnhart*, 431 F.3d 729, 731 (10th Cir. 2005); 20 C.F.R. § 404.1520. At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity during the alleged period of disability—April 1, 2011 through December 31, 2014. (TR. 17). At step two, the ALJ determined that Mr. Bowles had the following severe impairments: degenerative disc disease; degenerative joint disease; prediabetes; and hypertension. (TR. 17). At step three, the ALJ found that Plaintiff's impairments did not meet or medically equal any of the presumptively disabling impairments listed at 20 C.F.R. Part 404, Subpart P, Appendix 1. (TR. 18). At step four, the ALJ concluded that Mr. Bowles retained the residual functional capacity (RFC) to:

> [P]erform light work as defined in 20 CFR 404.1567(b) except occasionally climb ladders, ropes or scaffolds; frequently climb ramps or stairs, stoop, balance, crouch, crawl, or kneel; frequently reaching, handling and fingering; occasional overhead reaching with the right upper extremity.

(TR. 19). Based on this RFC, the ALJ concluded, at step four, that Plaintiff was not disabled based on his ability to perform his past relevant work. (TR. 29).

## III. ISSUES PRESENTED

On appeal, Plaintiff alleges error at step four.[1]

## IV. STANDARD OF REVIEW

This Court reviews the Commissioner's final decision "to determin[e] whether the factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied." *Wilson v. Astrue*, 602 F.3d 1136, 1140 (10th Cir. 2010). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Id.* (quotation omitted).

While the court considers whether the ALJ followed the applicable rules of law in weighing particular types of evidence in disability cases, the court will "neither reweigh the evidence nor substitute [its] judgment for that of the agency." *Vigil v. Colvin*, 805 F.3d 1199, 1201 (10th Cir. 2015) (internal quotation marks omitted).

## V. ERROR AT STEP FOUR

Mr. Bowles alleges that the ALJ erred at step four, in finding that Plaintiff could return to his past relevant work. The Court agrees.

### A. The Three Phases of Step Four

At step four, the Tenth Circuit has mandated the ALJ perform a specific three-phase analysis:

> In the first phase, the ALJ must evaluate a claimant's physical and mental residual functional capacity (RFC), . . . and in the second phase, he must

---

[1] Mr. Bowles also alleges error in the consideration of various medical opinions, but because of reversible error at step four, the Court need not address the other claims. *See Madrid v. Barnhart*, 447 F.3d 788, 792 (10th Cir. 2006); *Watkins v. Barnhart*, 350 F.3d 1297, 1299 (10th Cir. 2003).

determine the physical and mental demands of the claimant's past relevant work. In the final phase, the ALJ determines whether the claimant has the ability to meet the job demands found in phase two despite the mental and/or physical limitations found in phase one[.] At each of these phases, the ALJ must make specific findings.

*Winfrey v. Chater*, 92 F.3d 1017, 1023 (10th Cir. 1996) (internal citations omitted).

### B. The Administrative Hearing/Administrative Findings

At the hearing, a Vocational Expert (VE) had identified Mr. Bowles as having four jobs which were considered his past relevant work: (1) cable line technician, Dictionary of Occupational Titles (DOT) #821.261-010, classified as "heavy, skilled" work with an SVP of 7; (2) cable maintenance manager, DOT #822.281-014, classified as "light, skilled" work with an SVP of 7; (3) sexton (also identified as "church janitor"), DOT #389.667-010, classified as "medium, (performed at light) unskilled" work with an SVP of 2; and, and (4) child monitor, DOT #301.667-010, classified as "medium, semi-skilled" work with an SVP of 3. (TR. 63). Following that testimony, the ALJ presented the VE with various hypotheticals, which included restrictions involving:

- light work only,
- "no more than frequent reaching," and
- "no more than occasional overhead reaching with the right upper extremity."

(TR. 64). The limitations set forth in the hypothetical correlate with the ALJ's RFC determination for Mr. Bowles. *Compare* TR. at 19 *with* TR. at 64. In response to the hypothetical question, the VE testified that only the job of cable maintenance manager would be available. (TR. 64). In doing so, the VE specifically eliminated the job of sexton,

4

which the VE had found that Mr. Bowles had performed at the light exertional level, because the VE was concerned that the reaching requirements of that job (which required "frequent" reaching) would exceed Plaintiff's RFC because the DOT did not "differentiate reaching categories." (TR. 64). The VE's statements obviously implicated the special "occasional" overhead reaching limitation because Mr. Bowles' RFC which allowed for "frequent" reaching would not, on its face, conflict with the "frequent" reaching requirement for sexton. DOT #389.667-010.

Notwithstanding the VE's testimony that only one job would remain with the limitations set forth in Mr. Bowles' RFC, the ALJ concluded, at step four, that Plaintiff was not disabled based on his ability to perform the past jobs of: (1) cable maintenance manager, (2) sexton, and (3) child monitor. (TR. 29).

### C.  Error at Step Four

As his proposition of error, Mr. Bowles states:

The ALJ Made RFC Findings but Improperly Delegated the Remaining Phases of the Step Four Analysis to the Vocational Expert, Which Left this Court Nothing to Review, Because the Remainder of the Step Four Analysis Occurred in the Vocational Expert's Head.

(ECF No. 13:2). Specifically, Plaintiff alleges: (1) the ALJ improperly found, without explanation, that Plaintiff could perform three of the past jobs when the VE stated that all but the cable maintenance manager job would be eliminated, (2) assuming the ALJ meant to adopt the VE's testimony and only rely on Plaintiff's ability to perform the job of cable maintenance manager, an irreconcilable conflict existed between the RFC which allowed only "occasional" overhead reaching with the right arm and the remaining job

5

which required "frequent" reaching, and (3) neither the VE nor the ALJ made any findings on whether the past relevant work had existed in significant numbers.

The Court begins by rejecting Plaintiff's third allegation of error as without merit. *See Barnhart v. Thomas*, 540 U.S. 20 (2003) (holding that at step four, in concluding that a claimant may return to her past relevant work, an ALJ need not investigate whether that work exists in significant numbers in the national economy, noting that the inquiry into the "national economy" is reserved for step five). However, the remaining arguments have merit.

In response to Plaintiff's statement regarding the ALJ's seemingly improper reliance on three jobs at step four, Ms. Berryhill states: "The ALJ incorrectly wrote that the church janitor/sexton and child monitor jobs were compatible with the RFC, however, they are not." (ECF No. 16:8.) Although Ms. Berryhill does not further elaborate on why the RFC and the two jobs are not compatible, one theory is that the VE testified to the same. (TR. 64). But in the decision, the ALJ did not affirmatively state that she had rejected the VE's testimony. (TR. 29). Instead, the ALJ simply cited the VE's testimony regarding the DOT codes of the three jobs and then stated that Mr. Bowles was capable of performing all three jobs. (TR. 29). But these findings overlook the fact that the VE had specifically eliminated two of the three jobs. (TR. 64).

Although Ms. Berryhill seems to concede error on the ALJ's reliance on the three jobs, she essentially argues that the error is harmless in light of the ALJ's reliance on the remaining job of cable maintenance manager, which aligned with the VE's testimony.

6

(ECF No. 16:8); see TR. 64; see generally Keyes–Zachary v. Astrue, 695 F.3d 1156, 1162–63 (10th Cir. 2012) (indicating that harmless-error analysis may be appropriate where the ALJ did not properly consider evidence but "no reasonable administrative factfinder, following the correct analysis, could have resolved the factual matter in any other way" (internal quotation marks omitted)). The Court disagrees with Ms. Berryhill's theory of harmlessness.

According to Mr. Bowles, a conflict existed between the RFC and the job of cable maintenance manager which eliminated the ALJ's reliance on that job at step four. (ECF No. 13:3-4). If Mr. Bowles is correct, the Court can only uphold the administrative decision if the ALJ provided a reasonable explanation for why the Plaintiff could still perform the job despite the conflict. *See supra, Winfrey*. In response, Ms. Berryhill argues that no apparent conflict existed based on: (1) the DOT description of the job and (2) the VE's failure to alert the ALJ of any apparent conflict. (ECF No. 16:9-10). Two problems exist with Ms. Berryhill's defense.

First, Defendant's reliance on the job description, which describes the day-to-day duties of the job,[2] ignores the specific exertional abilities required by the job, and as listed in the DOT, such as "frequent" reaching. *See* DOT #822.281-014. On its face, the requirement for "frequent" reaching conflicts with the RFC limitation which allows Mr. Bowles to only "occasionally" reach overhead with his right arm. *Compare* TR. 19 *with* DOT #822.281-014.

---

[2] (ECF No. 16:10).

7

Second, the VE essentially alerted the ALJ to the existence of the conflict when she: (1) testified that the DOT did not differentiate between categories of reaching and (2) eliminated the job of sexton based on a conflict involving reaching. (TR. 64). Both the cable maintenance manager job and the job of sexton require "frequent" reaching. *See* DOT #822.281-014 & DOT #389.667-010. But the VE eliminated the job of sexton based on her concern that the job could not be performed with the specific reaching limitations in the hypothetical. (TR. 64). Obviously, the concern involved the limitation for overhead reaching which was limited to only "occasionally" with the right arm, because the general limitation on no more than "frequent" reaching was compatible with the job. *See* DOT #389.667-010. Thus, the question becomes, in light of the elimination of the sexton job, which the VE deemed incompatible with Mr. Bowles' RFC, why would the job of cable maintenance manager not also be eliminated?

One explanation is that the ALJ did not eliminate either job, as evidenced by her step-four finding that Plaintiff could perform all three jobs. *See* TR. 29. But if, the ALJ indeed meant to rely on all three jobs, the decision lacks findings which would explain how she reached such a decision. At step four, the ALJ simply stated the VE's testimony as to the DOT codes and exertional levels for the past jobs, then concluded that Plaintiff could work as a cable maintenance manager, a sexton, and a child monitor. (TR. 29). But she provided no support for such findings which was especially critical, in light of the VE's contrary testimony. If, however, the ALJ meant to rely on the VE's testimony and eliminate all but the cable maintenance manager job, the ALJ has also not explained how

she reached this decision and the same appears incompatible with the VE's testimony which eliminated the job of sexton, which had the same reaching requirements of cable maintenance manager. As discussed, an explanation is mandated under Tenth Circuit law. *See Winfrey, supra*, Maybe the ALJ did not mean to adopt the conflict as it applied to the job of cable maintenance manager, but if so, she needed to explain why.

In *Bowman v. Astrue*, 511 F.3d 1270 (10th Cir. 2008), the Court considered circumstances strikingly similar to the instant case and the Court finds that case controlling. In *Bowman*, the ALJ had concluded the claimant: (1) retained an RFC to perform light work with "limited use" of her left hand and (2) could perform her past relevant work as a cashier, housekeeper, food preparer, fast food worker, and hostess. *Bowman*, 511 F. 3d at 1272. The district court affirmed and the claimant appealed. *Id.* On appeal, the Tenth Circuit began by noting the required three-phase, step four analysis in *Winfrey*. *Id.* The Court then found that the ALJ had satisfied phase one of the analysis, by making specific RFC findings, but that his analysis at phases two and three was "legally deficient." *Id.* Citing, with approval, the claimant's brief, the Court explained:

> Here, the ALJ found [the claimant] to have "limited use" of her left hand as part of her RFC. The ALJ also found that [the claimant] could perform her past relevant work as a cashier, housekeeper, food preparer, fast food worker, and hostess. *Id.* However, not only did he fail to address the impact of this relatively vague restriction on [the claimant's] ability to perform her past relevant work with the VE, but the ALJ also failed to make any findings regarding the handling demands of such work in his decision.
>
> Further, because he failed to make the necessary findings at phase two, the ALJ was unable and failed to make the necessary "function by function" comparison between [the claimant's] limited use of her left hand and the demands of her past work as required at phase three. Due to these failures,

9

> the record lacks the necessary documentation concerning the impact [the claimant's] limited use of her left hand would have on her ability to perform her past relevant work (which all require frequent to constant handling of objects); or any evidence supporting the ALJ's finding that [the claimant] could perform such work despite that limitation.

*Id.* at 1272–73. Because all of the claimant's past jobs had required "frequent" or "constant" handling, and the ALJ had found that the claimant had only "limited use" of her left hand, the Court found that the ALJ was required to explore the conflict and make appropriate findings. The Court stated:

> After the VE identified the appropriate DOT Codes for [the claimant's] prior jobs, the ALJ could have taken administrative notice of this job information, and then asked the VE to give an opinion concerning whether [the claimant's] limited use of her left hand would affect her ability to perform the required handling activities. The ALJ did not pursue such an inquiry, however, and did not otherwise make the necessary findings at phases two and three of step four[.]

*Id.* at 1273. Here, the ALJ committed the same legal errors as in *Bowman*.

Like in *Bowman*, the ALJ here satisfied phase one by making a specific RFC finding that Mr. Bowles was limited to no more than "occasional" overhead reaching with his right upper extremity. (TR. 19). And here, like in *Bowman*, the VE provided testimony regarding the DOT job code and exertional level of the past work. (TR. 63). In *Bowman*, the Court did not specify whether the ALJ noted the VE's testimony on these issues in the administrative decision, only that the VE had so testified. *Bowman*, 511 F3d. at 1273. Here, however, the Court recognizes that the ALJ did note the VE's testimony in the administrative decision. *See* TR 29. But that difference alone does not salvage the VE's step four decision.

After noting the RFC and the job code information, the ALJ here simply concluded that Mr. Bowles could perform three past relevant jobs, including the job of cable maintenance manager. (TR. 29). But as discussed, at the outset, an initial error arises regarding whether the ALJ meant to rely on three jobs at step four or only the job of cable maintenance manager. The Court cannot answer this question in the absence of an explanation by the ALJ. If, as Ms. Berryhill contends, the reliance on the three jobs was a harmless error, the ALJ should have inquired into the reaching conflict which clearly existed between the RFC and the job description of the cable maintenance manager job.

As in *Bowman*, once the VE identified the job code for cable maintenance manager, the ALJ should have asked the VE to give an opinion concerning whether Mr. Bowles could perform that job with his special restriction involving only occasional overhead reaching with his right extremity. The ALJ was alerted to the potential conflict following the VE's testimony that the DOT did not differentiate between reaching categories and another job—sexton—had already been eliminated based on the same reaching conflict which existed with the job of cable maintenance manager. *See* TR. 64.

The ALJ failed to make the proper inquiry or explain her ultimate findings at step four. Thus, the Court concludes any error in relying on three jobs at step four was not harmless. The ALJ's step four findings ran afoul of established Tenth Circuit law and the error mandates remand.

**ORDER**

The Court has reviewed the medical evidence of record, the transcript of the administrative hearing, the decision of the ALJ, and the pleadings and briefs of the parties. Based on the forgoing analysis, the Court **REVERSES AND REMANDS** the Commissioner's decision for further administrative development.

ENTERED on May 9, 2018.

SHON T. ERWIN
UNITED STATES MAGISTRATE JUDGE